## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ALBERT M. HAYES** | § | **CIVIL ACTION NO. 2:24-cv-01376** |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **GSTEK, INC. and CHRISTINE** | § | |
| **E. WORMUTH, SECRETARY, UNITED** | § | |
| **STATES DEPARTMENT OF THE** | § | |
| **ARMY** | § | |
| *Defendants* | § | |
| | § | **JURY DEMAND HEREIN** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, **ALBERT M. HAYES**, resident of the full age of majority and domiciled in Lake Charles, Louisiana, who respectfully avers as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. § 701 *et seq.*

2. This Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States;

   b. 28 U.S.C. § 1343 (3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government;

1

3. With respect to Defendant, GStek, Inc., Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) and/or Louisiana Commission on Human Rights prior to instituting this action. Plaintiff signed his formal Charge on or about March 24, 2023 (Charge No. 461-2023-01564).

4. Plaintiff received the EEOC's Notice of Right to Sue on July 10, 2024. *See* Exhibit A. Plaintiff is afforded 90 days from his receipt of such Notice to commence suit, and the date of this filing is within the statutory period.

5. With respect to the Department of the Army, which Plaintiff submits is Plaintiff's "joint employer" for purposes of this suit, Plaintiff engaged in the following efforts to exhaust remedies:

   a. At 12:17 p.m. on March 2, 2023, counsel for Plaintiff contacted the Fort Johnson (Polk) EEO Office (337-531-1799) and left a voicemail detailing the following: 1) Sudduth & Associates, LLC had been recently retained to represent Plaintiff; 2) Plaintiff's discharge date of January 26, 2023; and 3) Plaintiff's intent to contact an EEO counselor and initiate EEOC counseling within the 45 days required by law.

   b. At approximately 3:06 p.m. on March 2, 2023, counsel for Plaintiff left a nearly identical voicemail at (337) 531-1911. The voicemail message indicated that Plaintiff should receive a response call within 24 hours.

   c. On March 6, 2023, paralegal, Kristen M. Kech, spoke to Willie Chandler with the Fort Johnson (Polk) EEO office, at which time Mr. Chandler advised Plaintiff's counsel:

      i. The EEO Initial Counseling Complaint must come from Plaintiff himself, despite the fact that Plaintiff is represented by counsel;

2

    ii.  Once Plaintiff called the EEO office, the process would be initiated.

d.  Plaintiff contacted the Fort Johnson (Polk) office via telephone on March 7, 2023, and followed up with an email to Mr. Chandler on March 8, 2023, therein requesting to make contact with the EEO to exhaust any remedies that may be necessary to seek redress against the Army as a joint employer. The EEO office did ultimately process Plaintiff's request for initial EEO contact within the 45 day period contained in 29 C.F.R. § 1614.105(a)(1)).

    i.  Throughout several conversations detailed herein, EEO officials maintained that, because the Army was not Plaintiff's "payroll" employer, Plaintiff did not need to file with the EEO and, should instead, file an EEOC Charge against GStek, Inc. In response, counsel explained to several individuals Plaintiff's position that, under the facts of this case, the Army is Plaintiff's "joint employer" and, as such, requires Plaintiff to exhaust administrative remedies with respect to it through the proper EEO channels. Consistently throughout Plaintiff's efforts to institute the EEO process, EEO agents attempted to dissuade Plaintiff from filing the complaint against the Army and altogether ignored the "joint employer" basis for Plaintiff's contact.

e.  Per Mr. Chandler's request, Plaintiff's counsel submitted a Designation of Representation, Inform Aggrieved of Alternate Dispute Resolution (ADR), Aggrieved Person's Rights and Responsibilities, and a timeline of events to Mr. Chander on March 9, 2023 and March 13, 2023.

f.  Sudduth & Associates also completed and submitted an EEO Counselor's report to Mr. Chandler on March 13, 2023. In response, Mr. Chandler confirmed that he had

received all necessary paperwork and that the Labor Attorney was going to confirm the Agency's Joint Employer status on March 17, 2023.

g.  Sudduth & Associates followed up with Mr. Chandler on June 5, 2023, and after receiving an away message, contacted Robert Cini and April Evans requesting an update. In a response dated June 5, 2023, Ms. Evans indicated that she would forward counsel's email to the lawyer for a response. Then, at 2:13 p.m. on June 5, 2023, Ms. Evans indicated that GStek has a contract with NETCOM located at Ft. Huachuca, AZ and that Sudduth & Associates and/or Plaintiff needed to contact the EEO office at Ft. Huachuca to continue with the request. At that time, Ms. Evans could not provide Sudduth & Associates with point of contact for that office, but she ended her email by stating that she was trying to locate one to provide.

h.  After receiving no response, Plaintiff's counsel followed up via email on June 19, 2023, and on June 20, 2023, Ms. Evans provided the following "We were pointed in the direction to have the COR for the contract to answer questions based on A 690-600, those questions have been answered and now that is under legal review. Once I get that back I will update you on that status."

i.  After receiving no follow-up, paralegal Kristen Kech emailed Ms. Evans on July 10, 2023, and again on July 18, 2023.

j.  While the Ft. Polk EEO officials told Plaintiff's counsel that they were in communication with Ft. Huachaca, Plaintiff's counsel called the Ft. Huachaca office on August 22, 2023, at which time counsel was told by the Claims Manager, Susanne Sueing, that she had never heard Plaintiff's name. Ms. Sueing then proceeded to argue with Plaintiff's counsel (over the course of two separate phone

calls) and adamantly tell counsel that Plaintiff never needed to file with the EEO office - the same argument undersigned had faced several months ago with agents Ft. Polk. She did indicate that her Director would contact Plaintiff's counsel to "explain" Plaintiff's counsel's misunderstanding, and she further indicated she would contact the Ft. Polk individuals to get some clarity on the issue.

k.  On August 23, 2023, Ms. Evans sent an email containing a Memorandum, dated 25 Jul 2023, stating "After reviewing the enclosed questionnaire, there is not enough evidence to show that the Agency has sufficient control over Mr. Hayes, Albert to be deemed a Joint Employer; however, additional information could change this conclusion."  In response to Ms. Evans' August 23, 2023 email, Plaintiff's counsel indicated: 1) it was the first time counsel had ever seen the correspondence; and 2) counsel asked Ms. Evans to forward counsel the email showing that she actually sent the correspondence to counsel back on July 25, 2023. In that same email, counsel provided a full copy of *Chandra v. Bowhead Science & Technology, LLC*, 2017 WL 2729967 (N.D. Tex. 6/26/17), which indicates that, when an employee alleges a joint employer relationship with the Army, the employee must exhaust administrative remedies as to both the private employer-contractor and to the Army. Counsel ended the email with the following statement:

> *I know that is an argument on substantive merits, but the EEO offices are precluding Mr. Hayes from exhausting his remedies with respect to this argument by making a preliminary finding that no joint employer relationship exists. In the event the Army maintains that it is not a joint employer and will otherwise refuse to engage in any processing or investigation into Mr. Hayes' allegations, please confirm in writing either that: 1) Mr. Hayes has fully exhausted his administrative remedies against the Army with respect to this claim, or 2) the Agency is otherwise waiving any exhaustion requirements. Mr. Hayes will not fall victim to a Motion to Dismiss for failure to*

> *exhaust remedies by the Army because the EEO refuses to "exhaust"*
> *the claim in any way.*

l. After not receiving a response, Kristen Kech followed up again on August 29, 2023, and on August 30, 2023, Ms. Evans responded, indicating that she could not provide any proof that she had sent the July 25, 2023 to counsel's office at any time prior to August 23, 2023. In that email, Ms. Evans indicated she was speaking to "higher headquarters" on the questions counsel posed in its August 23, 2023 email and that she would share the message with the same. *See* Exhibit B.

m. After hearing nothing from quite some time, counsel followed up with Ms. Evans via email on March 28, 2024, with the following statement: "I'm circling back on this. Did the Army ever communicate its decision to you? I'm simply trying to make sure I exhaust Mr. Hayes' administrative remedies. If need be, I will fight the joint employer issue in district court - I just do not want a case to be dismissed because the Army refuses to even acknowledge Mr. Hayes' filing. I sincerely appreciate any update and guidance you can provide on this issue."

n. After receiving no response, counsel followed up again on April 30, 2024. In response, Ms. Evans provided counsel with the contact for the EEOCCR and indicated that someone with that office may be able to provide guidance or, at the very least, issue the FAD on the joint employer matter so that Plaintiff could proceed with filing in a federal court.

o. Almost immediately upon receipt of the additional contact information from Ms. Evans, on April 30, 2024, undersigned sent a lengthy email to the Pentagon at the email addresses provided by Ms. Evans, including as attachments all previous emails exchanged with the Fort Johnson (Polk) EEO office. At the end of the email,

counsel stated, "I would appreciate the opportunity to speak with someone regarding this matter, or, at the very least, be issued a FAD as to whether or not the Army will allow Mr. Hayes' EEO claim to proceed upon allegations that it is a Joint Employer. I simply want to ensure that I have exhausted all necessary remedies to avoid a dismissal on that basis, should I proceed with Mr. Hayes' discrimination/retaliation claims against the Army in federal district court." To date, undersigned has received no response.

p. On May 20, 2024, after receiving no responses from the EEOCCR, undersigned contacted Ms. Evans and requested a phone number or additional point of contact.

q. After receiving no response, paralegal, Gabrielle Fontenot, followed-up with Ms. Evans on June 3, 2024. Ms. Evans responded on June 4, 2024, asserting that she had been in a class and would "reach out to our immediate headquarters to ensure nothing has been changed or updated and inform you of that."

r. On June 10, 2024, paralegal, Gabrielle Fontenot, followed-up with Ms. Evans regarding additional contact information, and on June 17, 2024, stating:

> This is the email address we use; it is the EEOCCR mailbox.  I can email it and let them know that your office is attempting to get a hold of them in reference to a FAD.  This time I typed it instead of copying it.  Might make a difference.
>
> usarmy.pentagon.hqda-asa-mra.mbx.eeoccr@army.mil
>
> Hope this helps, I have a mailing address as well and a fax number, this may help too.
>
> Department of the Army, EEO Compliance & Complaints Review
> ATTN:  SAMR-EEOCCR
> 5825t Street, Bldg 214, Room 129
> Fort Belvoir, VA  22060-5921
> FAX: (703) 805-8722

s.  On June 17, 2024, Counsel faxed and mailed correspondence, identical in substance to the email counsel had sent to the OCCR email address on April 30, 2024, to the facsimile number and physical address provided by Ms. Evans. At no time has undersigned received a response.

t.  On July 9, 2024, and after receiving no response from any Army or EEO representative, undersigned again contacted Ms. Evans, this time stating the following:

> Good afternoon April:
>
> On August 23, 2023, you emailed me a document entitled "Joint Employer Memo" which provides that, if the Complainant had additional information relevant to the Joint Employer issue, I could direct it to your attention. I responded to your email on August 23, 2023 with additional information, including case law supporting my position that the Army could constitute a Joint Employer under the particular facts and circumstances of Mr. Hayes'. My office followed up on August 29, 2023, and you responded at 8:45 a.m. on August 30, 2023 that you were discussing the information/questions with "higher headquarters" and that you would let me know their response.
>
> To date, and despite several email requests, I have not received any additional information as to the Army's determination based on our August 23, 2023 correspondence. The only correspondence I have ever received is your August 23, 2023 email containing the Joint Employer Memo dated July 25, 2023. That correspondence does not appear to be a final agency decision, and it provides no appellate rights or additional information of any kind. To the contrary, it invited additional information for consideration, which was provided nearly a year ago. I have never received a formal Agency decision/dismissal on the matter, based upon that additional information, which has left this case sitting idly.
>
> My office has attempted to contact the EEOCCR as directed in your April 30, 2024 correspondence. On May 20, 2024, I indicated to you via email that I had emailed EEOCCR at the address you provided and had not received a response, at which time I asked for additional contact information. My office followed up with you on June 3, 2024, and you ultimately provided us with additional information on June 17, 2024. We have now attempted to email, fax, and mail information to EEOCCR and have not received any response.

Is there someone at "higher headquarters" that I can contact, via email or telephone, to get some type of Final Agency determination on this? There has been no EEO investigation, I have not been able to request an EEO hearing, and there has been no FAD or other Agency decision issued. At this stage, it is my understanding that I am still awaiting the decision of "higher headquarters" regarding the joint employer issue. I am simply trying to represent my client and follow any and all procedures necessary to exhaust my remedies with respect to this claim.

Please and thank you for any additional information you can provide. I look forward to getting this matter resolved or otherwise proceeding in the appropriate venue.

u. Counsel forwarded the July 9, 2024 email to Mr. Chandler on July 9, 2024 in an additional request for assistance.

v. On August 12, 2024, and after receiving no response from either Ms. Evans or Mr. Chandler, counsel sent the following email:

Good afternoon April and Willie:

After not receiving a response from either of you in response to my July 9, 2024 email(s), and after having received no response whatsoever from any other Agency contact as provided, please let this correspondence serve as formal notice of Complainant's intent to file a federal lawsuit in the Western District of Louisiana against the Department of the Army due to its status as Mr. Hayes' joint employer. I have received a Notice of Right to Sue from the EEOC with respect to Mr. Hayes' other joint employer, GStek, Inc., and I intend to include both GStek, Inc. and the Department of the Army as defendants in the forthcoming discrimination lawsuit. By way of notice, I intend to submit that the Army has waived and/or forfeited any right to exhaustion arguments due to the repeated failures of the Agency to comply with its investigatory obligations, or that Complaint otherwise be deemed to have exhausted his remedies with respect [Sic].

By way of further information, my office also: 1) directed an email to usarmy.pentagon.hqda-asa-mra.mbx.eeoccr@army.mil on April 30, 2024; and 2) sent written correspondence via certified mail to the Department of the Army, EEO Compliance and Complaints Review, attn: Samr-eeoccr at 5825 21st St., Bldg. 214, Room 129, Fort Belvoir, VA 22060-5921. My office received a return receipt from the Department, indicating that the letter had been signed for by Valerie Hebert on July 31, 2024.

If anyone from the Agency can provide me with the information my office has been requesting for several months, please have them contact me at their earliest convenience. I am simply trying to protect my client's legal interests. I hope you can understand my position.

Respectfully,

w. On August 15, 2024, Ms. Evans provided the following:

Good morning,

The Fort Johnson EEO office has nothing further to provide, I have sent everything I had, my office does not and cannot do a FAD for your client. The information below that I sent you is the office that provides the FAD's

I totally understand your position and protecting your client, and I apologize I have nothing more that I can send you.

x. At this time, neither Plaintiff nor Plaintiff's counsel has received any correspondence whatsoever from any Army, EEO, or EEOCCR representative regarding the EEO and/or Agency's final disposition of Plaintiff's joint employer claim. As such, despite Plaintiff and counsel's repeated efforts to exhaust remedies and have the EEO investigate the Army's involvement in the failure to accommodate/disability discrimination claims alleged herein, the EEO and/or Army has steadfastly refused to do so out of what appears to be the Agency's disagreement that the Army ultimately would qualify as a "joint employer" under the facts of the case. At no time has the Agency provided any formal closure, dismissal or acceptance of Plaintiff's EEO complaint, nor has the Agency issued a Final Agency Determination ("FAD") with respect to the same. As such, while Plaintiff timely initiated an EEO complaint and, thus, attempted to vindicate his rights by starting the process in a timely manner, the EEO and/or Agency has woefully failed to comply with its own obligations to investigate or otherwise act

upon a timely filed EEO complaint. For this reason, Plaintiff submits that he has exhausted his administrative remedies with respect to the Army or, alternatively, that the Agency waived, forfeited, or should otherwise be estopped from asserting that Plaintiff has failed to exhaust remedies under the specific procedural posture of this case.

6. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (b) because the events that gave rise to this Complaint occurred in the Western District of Louisiana, specifically in Vernon Parish, making this District Court the most appropriate venue for this suit. Defendant discharged Plaintiff from employment at its Fort Johnson (Polk), Louisiana location, located within the Parish of Vernon, State of Louisiana.

## PARTIES

7. Plaintiff is a citizen of the United States and resides in the State of Louisiana.

8. Defendant, **GSTEK, INC.** ("GSTek"), is a domestic corporation authorized and conducting business in the State of Louisiana. It may be served through its agent for service of process, Cogency Global Inc., at 4459B Bluebonnet Blvd., Baton Rouge, LA 70809.

9. Defendant, **THE DEPARTMENT OF THE ARMY** ("the Army"), is an agency of the United States of America, who may be sued and served through its Secretary, Hon. Christine E. Wormuth.

10. At all times relevant to the instant suit, Plaintiff worked for Defendants out of the Fort Johnson (Polk), Louisiana facility, which is located in the Parish of Vernon, State of Louisiana.

## STATEMENT OF FACTS

11. At all relevant times, Plaintiff has been medically diagnosed with Autism, Major Depressive Disorder, and Social Anxiety Disorder.

12. Plaintiff began his employment with GC&E as a Level II System Administrator (IT) in approximately March 2021. Upon information and belief, at this time, GC&E maintained a contract with the Department of the Army, through which it operated and maintained the information systems and infrastructure – including Administrative Telephone (Inside Plaint, Outside Plant, IT Support, help desk, and configuration management) – at Fort Johnson (Polk), England Park, and Peason Ridge.

13. While Plaintiff was employed by GC&E, he performed all essential functions of his position remotely (i.e., via telework). As such, Plaintiff successfully performed all essential functions of his position via telework for approximately one (1) year.

14. In approximately December 2021, the Army contract transitioned from GC&E to Defendant, GStek, Inc. As such, Plaintiff's employment rolled from GC&E to GStek, Inc., such that Plaintiff began his employment with GStek Inc., in the same Level II System Administrator (IT Department) position, on or about December 21, 2021.

15. Due to COVID-19, Defendants collectively permitted Plaintiff to work from home from the date of his hire through approximately February 2022. During this timeframe, Plaintiff satisfactorily performed the essential functions of his position.

16. When Plaintiff transitioned from remote work to in-person work in approximately February 2022, he became immediately overstimulated.

17. As a result, Plaintiff sought medical treatment, and he was formally diagnosed with Autism, Major Depressive Disorder, and Social Anxiety Disorder in May 2022.

18. In approximately August 2022, and due to being overstimulated in the workplace, Plaintiff was admitted to an inpatient psychiatric hospital located in Alexandria, Louisiana after experiencing suicidal ideations.

19. Upon Plaintiff's return to work following his inpatient stay, neither Defendant acknowledged Plaintiff's medical condition or recent absence that occurred as a direct result thereof.

20. On October 12, 2022, Plaintiff submitted a Reasonable Accommodation Request form requesting remote work due to his medical conditions and the effects of his evening medications.

21. In support of Plaintiff's reasonable accommodation request, on October 18, 2022, Plaintiff's treating physician wrote a letter medically recommending that, due to Plaintiff's disabling conditions, Plaintiff be permitted to perform remote work which, in turn, would accommodate his disabling conditions, would reduce the overstimulation caused by Plaintiff working in-person at the Fort Johnson (Polk) facility, and permit Plaintiff to continue performing the essential functions of his position.

22. Plaintiff delivered his physician's letter, which included an accommodation request, to GStek Human Resources ("HR") personnel, his supervisor, Charles Slate ("Slate"), and project manager, John Dismer ("Dismer").

23. In response, GStek management indicated that it would pass Plaintiff's accommodation request up the chain of command, which includes, but was not limited to, Army officials overseeing the contract existing between the Department of the Army and GStek.

24. Upon information and belief, on October 27, 2022, Dismer determined that Plaintiff could effectively continue his current duties through remote work.

25. Upon information and belief, Dismer formally requested a medical work accommodation approval from the Army on October 28, 2022.

26. Upon information and belief, on November 8, 2022, the Army representatives (referred to as "COR") refused to honor Plaintiff's work-from-home accommodation request. Upon information and belief, the Army's reason for declining the request was an unqualified statement that it "would not be in the best interest of the organization to allow full-time teleworking."

27. In response, GStek stated that it would "try" to accommodate Plaintiff, to the extent possible, by permitting him to work from home a couple of days per week. Dismer refused to honor Plaintiff's request for full-time remote work and, in so doing, told Plaintiff: 1) Dismer oversaw several "disabled people" and 2) if Dismer "accommodated" Plaintiff, he would have to do the same for everyone else.

28. From approximately December 2022 through early January 2023, Plaintiff attempted to perform his duties by working from home two (2) to three (3) days per week and working the remaining days at the Fort Polk/Fort Johnson, Louisiana facility.

29. On or about January 16, 2023, Plaintiff experienced a mental breakdown and consequently worked from home for four (4) consecutive days, January 16, 2023 through January 19, 2023.

30. Upon information and belief, Defendants required Plaintiff to exhaust paid time off ("PTO") in order for Plaintiff to travel to attend drill (i.e., for his travel days). Plaintiff repeatedly attempted to take his travel days as "leave without pay"; however, GStek

14

continuously changed the designation of Plaintiff's travel days from "leave without pay" to PTO. Thus, when Plaintiff missed work for disability-related matters, he had to take these days off without pay and/or leave protection.

31. On January 16, 2023, Plaintiff made an emergency visit to his healthcare provider, which resulted in an increase in his medication dosage.

32. Plaintiff followed up with Defendant on January 17, 2023; however, he received no response.

33. On January 18, 2023, Plaintiff informed Slate that he had been receiving continuing treatment for anxiety and depression, including medication and counseling, and that his treating physician had recommended that Plaintiff be "allowed to delay attending drill until a later date in order to give [Plaintiff's] treatment more time to provide further relief from anxiety."

34. On or about January 19, 2023, Plaintiff advised Slate that, as a result of his conditions, his physician recommended that Plaintiff take a medical leave of absence. Slate altogether ignored Plaintiff's statement, and, at no time, discussed any potential protected medical leave with Plaintiff.

35. On or about January 23, 2023, Plaintiff advised Slate that he was experiencing difficulty in adjusting to his new medication(s)/dosage(s), that his treating physician would not clear him to attend drill at the time, and that he needed to work from home.

36. On January 24, 2023, Plaintiff inquired as to whether or not he was expected to go in to work for the day; however, he received no response.

37. On January 25, 2023, Plaintiff received a termination letter, therein effectuating his discharge on January 26, 2023.

38. According to GStek and Army employees, Plaintiff was terminated due to "absenteeism" concerns, among other things.

39. Although Defendants terminated Plaintiff's employment, Defendants falsely stated that Plaintiff resigned to the unemployment office which, in turn, precluded Plaintiff from obtaining unemployment benefits. This, in turn, furthered both the economic and non-economic harm Plaintiff sustained.

**FIRST AND SECOND CAUSES OF ACTION:**
**ADA/RA Failure to Accommodate/Engage in the Interactive Process**
*Pursuant to 42 U.S.C. § 12101 et seq. and 29 U.S.C. § 701 et seq.*

40. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

41. The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship." *Id.* § 12112(b)(5)(A). The Rehabilitation Act ("RA"), 29 U.S.C. § 794(a), which applies to the federal government, is interpreted using the same standards as the ADA. *See Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (citing *Delano–Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir.2002); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 n. 4 (5th Cir.1995).

42. At all relevant times, GStek was Plaintiff's "employer" as defined by the ADA. For at least twenty (20) calendar weeks in either 2022 and/or 2023, GStek employed at least fifteen (15) employees.

43. At all relevant times, the Army is also considered Plaintiff's "employer." The Army provided the place of work for Plaintiff at Fort Johnson (Polk), and the Army retained the express authority to control and set various terms and conditions of GStek employee's employment at the Fort Johnson (Polk) base, including whether or not they could telework. As such, under the facts of this case, the Department is considered Plaintiff's joint employer. In other words, though GStek and the Army are independent entities, these entities shared and/or codetermined matters governing the essential terms and conditions of Plaintiff's employment, including his ability to telework, and, thus, are both considered Plaintiff's "employer" for ADA/RA purposes. The Army, like GStek, also employed at least fifteen (15) employees in at least twenty (20) calendar weeks in either 2022 and/or 2023.

44. Plaintiff suffers from, and has been medically diagnosed with Autism, which, as recognized in the Code of Federal Regulations, is a physiological and/or psychological condition that substantially limits, at the bare minimum, Plaintiff's brain function, which is a major life activity. *See* 29 C.F.R. § 1630.2(j)(3)(ii)-(iii). Plaintiff's Autism readily constitutes an "actual disability" for purposes of both the ADA and RA.

45. Plaintiff also suffers from, and has been medically diagnosed with, Major Depressive Disorder, which, as recognized in the Code of Federal Regulations, is a physiological and/or psychological condition that substantially limits, at the bare minimum, Plaintiff's brain function, which is a major life activity. *See* 29 C.F.R. § 1630.2(j)(3)(ii)-(iii). Plaintiff's Major Depressive Disorder readily constitutes an "actual disability" for purposes of both the ADA and RA. When active, Plaintiff's Major Depressive Disorder renders him unable to focus, concentrate, think, communicate, and work, among other major life

17

activities, as compared to most people in the general population. *See, e.g.*, 29 C.F.R. § 12102(2)(A). Plaintiff's Major Depressive Disorder readily constitutes an "actual disability" for purposes of both the ADA and RA.

46. Plaintiff also suffers from, and has been medically diagnosed with, Social Anxiety Disorder (also known as social phobia), a psychological condition that substantially impairs Plaintiff's brain function, as well as his ability to focus, concentrate, think, communicate, and interact with others without intense anxiety, as compared to most people in the general population. *See, e.g., Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). Plaintiff's Social Anxiety Disorder readily constitutes an "actual disability" for purposes of both the ADA and RA.

47. Plaintiff was objectively qualified for his position as Level II System Administrator (IT department). Not only was Plaintiff hired for the position, but he was able to perform the essential functions of the job, with or without a reasonable accommodation. Indeed, Plaintiff successfully performed all of his essential job functions from 2019 through February 2022, during which time he performed the same remotely.

48. Reasonable accommodations include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examination, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations." 42 U.S.C. § 12111(9)(B). Remote work may be a reasonable accommodation in many cases. *See, e.g., Ali v. Regan,* 11 F.4th 1264, 1279 (D.C. Cir. 2024).

49. On October 18, 2022, Plaintiff's treating physician wrote a letter medically recommending that, due to Plaintiff's disabling conditions, Plaintiff be permitted to perform remote work

18

which, in turn, would reduce the overstimulation caused by Plaintiff working in-person at the Fort Johnson/Fort Polk facility, and permit Plaintiff to continue performing the essential functions of his position. Plaintiff's request for telework on or about October 18, 2022 constitutes a request for reasonable accommodation pursuant to both the ADA and RA.

50. Plaintiff provided the accommodation to GStek who, in turn, relayed the request to the Department of the Army. As such, both Defendants had actual knowledge of Plaintiff's medical conditions and diagnoses, resulting limitations, and the resultant accommodation request.

51. In approximately November 2022, Army representatives (referred to as "COR") refused to honor Plaintiff's telework accommodation request. At no time did the Army engage in the required interactive process with Plaintiff, nor did it ever indicate, in any way, why accommodating the request would pose an undue burden on it in any way. To the contrary, Plaintiff had already shown that he would be able to fully perform the essential functions of the position upon being allowed to work remotely, and the Department of the Army had already shown that it was not unreasonable or an undue burden to permit Plaitiff to do so, seeing as it had all of its employees working remotely from, at the very least, December 2021 through February 2022 due to COVID-19 concerns.

52. Because the Army provided the place of work for Plaintiff, and because the Department Army had the express authority to control and set various terms and conditions of GStek employee's employment at the Fort Polk/Fort Johnson base, including whether or not they could telework, under the facts of this case, the Department is considered Plaintiff's joint employer for purposes of his ADA/RA claim. In other words, though GStek and the Army are independent entities, these entities shared and/or codetermined matters governing the

essential terms and conditions of Plaintiff's employment, including his ability to telework, and, thus, are both considered Plaintiff's "employer" for ADA/RA purposes.

53. By refusing to accommodate Plaintiff's known disabling and limiting conditions in any way, much less in any reasonable way, the Army violated the anti-discrimination provisions of the Rehabilitation Act.

54. As a direct result of the Department's failure to accommodate Plaintiff, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

55. As a result of the Army's failure to accommodate Plaintiff, Plaintiff has suffered monetary losses including, but not limited to, back pay, medical and other benefits, and other losses to be more fully developed at the trial on this matter.

56. Wherefore Plaintiff asks this Honorable Court to find Defendant, **THE DEPARTMENT OF THE ARMY,** liable for the violation of 29 U.S.C. § 701 *et seq.*

57. Although the Army altogether failed to engage in the interactive process with Plainiff and denied him the reasonable accommodation he requested, GStek nevertheless stated that it would "try" to accommodate Plaintiff, to the extent possible, by permitting him to work from home a couple of days per week.

58. From approximately December 2022 through early January 2023, Plaintiff attempted to perform his duties by working from home two (2) to three (3) days per week and working the remaining days at the Fort Polk/Fort Johnson, Louisiana facility.

59. This proposed accommodation, however, was not reasonable, which led Plaintiff to experience a mental breakdown, causing him to miss four (4) days of work in January 2023

and obtain additional medical assistance, including the increase in dosage of his various disability-related medications.

60. Following Plaintiff's January 2023 absences, all of which were a direct consequence of Defendants' collective failure to reasonably accommodate Plaintiff's known disabling conditions and medical limitations, Plaintiff was terminated for absences directly related to his disabling condition.

61. Based on the foregoing, as a direct result of GStek's failure to reasonably accommodate Plaintiff, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

62. Based on the foregoing, as a result of GStek's failure to reasonably accommodate Plaintiff, Plaintiff has suffered monetary losses including, but not limited to, back pay, medical and other benefits, and other losses to be more fully developed at the trial on this matter.

63. Wherefore Plaintiff asks this Honorable Court to find Defendant, **GSTEK, INC**., liable for the violation of 42 U.S.C. § 12112(a).

---

### THIRD AND FOURTH CAUSES OF ACTION:
### Disability Discrimination
*Pursuant to 42 U.S.C. § 12101 et seq. and 29 U.S.C. § 701 et seq.*

---

64. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

65. The ADA (and RA) prohibits discrimination against a qualified individual based on the individual's disability. 42 U.S.C. § 12112(a); *EEOC v. LHC Grp., Inc*., 773 F.3d 688, 694 (5th Cir. 2014).

66. By virtue of Plaintiff's Autism, Major Depressive Disorder, and Social Anxiety Disorder described above, Plaintiff has "actual disabilities" within the meaning of the ADA.

67. By virtue of Plaintiff's taking leaving to attend inpatient treatment in August 2022, and subsequently through provision of a physician's note and accommodation request to Defendants on October 18, 2022, Defendants had actual knowledge of Plaintiff's disabling conditions.

68. Plaintiff was objectively qualified for his position as Level II System Administrator (IT department). Not only was Plaintiff hired for the position, but he was able to perform the essential functions of the job, with or without a reasonable accommodation. Indeed, Plaintiff successfully performed all of his essential job functions from the date of his hire with GNCE through February 2022, during which time he performed the same 100% remotely. Accordingly, upon the provision of a reasonable accommodation that would permit Plaintiff to work remotely, he could perform all essential functions of the job.

69. Plaintiff was notified of his termination on January 25, 2023, made effective January 26, 2023. As such, Plaintiff was subjected to an adverse employment action on January 25, 2023.

70. Plaintiff was discharged on account of his disability. First and foremost, Plaintiff was terminated almost immediately after an event that highlighted his ADA/RA-protected disability. Upon information and belief, Plaintiff was terminated for absenteeism; however, all of the absences – most of which happened just a week prior – occurred as a direct function of Plaintiff's known disabling conditions, combined with Defendants' collective refusal and/or failure to provide the reasonable telework accommodation Plaintiff requested.

71. The temporal proximity of Plaintiff's psychological episode, which left him out of work from January 16-19, 2023, and his termination on January 26, 2023 is sufficiently close, standing alone, to satisfy Plaintiff's *prima facie* claim.

72. Indeed, to the extent Defendant(s) rely upon any of Plaintiff's medically related absences which stem, from whole or in part, Plaintiff's medical conditions as exacerbated by Defendants' failure and/or refusal to reasonably accommodate Plaintiff's telework request, the decision to discharge Plaintiff was driven exclusively by Plaintiff's disabling condition in violation of the ADA and/or RA.

73. Defendants' conduct was willful, intentional, and made with reckless disregard for the established rights of Plaintiff.

74. As a result of Defendants' unlawful discrimination, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

75. As a result of Defendants' unlawful discrimination, Plaintiff has suffered monetary losses including, but not limited to, back pay, medical and other benefits, and other losses to be more fully developed at the trial on this matter.

76. Wherefore Plaintiff asks this Honorable Court to find Defendant, **GSTEK, INC.**, liable for the violation of 42 U.S.C. § 12112(a) and the Defendant, the **DEPARTMENT OF THE ARMY**, liable for violation of 29 U.S.C. § 701 *et seq.*

*{Remainder of Page Intentionally Left Blank}*

---

**FIFTH AND SIXTH CAUSES OF ACTION:**
**ADA/RA Retaliation**
*Pursuant to 42 U.S.C. § 12101 et seq. and 29 U.S.C. § 701 et seq.*

---

77. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

78. Plaintiff submitted a reasonable accommodation request for his known disabling conditions to Defendant GStek on October 12, 2022. As such, Plaintiff engaged in protected activity. *See Stancy v. Highland Hilton/HEI Hotels & Resorts,* 2024 WL 3166447 (N.D. Tex. Jun. 6, 2024) (citing *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008)).

79. Plaintiff provided additional information, in support of his reasonable accommodation request, on October 18, 2022, including a physician's note reflecting his disabling condition and need for telework.

80. Upon information and belief, GStek escalated Plaintiff's accommodation request to the Army on October 28, 2022, who denied the same on November 8, 2022. As such, as of October 28, 2022, the Army had actual knowledge of Plaintiff's disabling condition(s) and requests for a reasonable accommodation.

81. Within approximately three (3) months of Plaintiff's initial accommodation request, Plaintiff was altogether terminated from his employment. Not only is this close temporal proximity sufficiently close to demonstrate the causal link between Plaintiff's protected activity and discharge, but the reason proffered for Plaintiff's termination, i.e., absenteeism, is driven entirely from Defendants' collective failure and/or refusal to implement the very accommodation Plaintiff requested.

82. But for Plaintiff's request for an accommodation (i.e., protected activity), Plaintiff would not have been discharged from his employment.

83. Defendants' conduct was willful, intentional, and made with reckless disregard for the established rights of Plaintiff.

84. As a result of Defendants' unlawful retaliation, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

85. As a result of Defendants' unlawful retaliation, Plaintiff has suffered monetary losses including, but not limited to, back pay, medical and other benefits, and other losses to be more fully developed at the trial on this matter.

86. Wherefore Plaintiff asks this Honorable Court to find Defendant, GStek, liable for the violation of 42 U.S.C. § 12112(a) and the Army liable for violation of 29 U.S.C. § 794(d).

## PRAYER

**WHEREFORE**, Plaintiff, **ALBERT M. HAYES**, requests that his Honorable Court enter judgment against Defendants providing the following relief:

(a) All damages to which Plaintiff may be entitled, including but not limited to back pay, reimbursement for lost position and training, social security and other benefits, front pay, and any and all statutory relief;

(b) Compensatory damages;

(c) Punitive or exemplary damages (against GStek, Inc.);

(d) Reasonable attorney's fees, with conditional awards in the event of appeal;

(e) Pre-judgment interest at the highest rate permitted by law;

(f) Post-judgment interest from the judgment until paid at the highest rate permitted by law;

(g) Costs, including expert fees;

(h) Reasonable and necessary medical care and expenses in the past and future;

(i) Mental anguish damages in the past and future;

(j) Injunctive relief; and

(k) Such other and further relief, at law or in equity, to which Plaintiff may be entitled.

---

## DEMAND FOR JURY TRIAL

---

Pursuant to Rule 38 of Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

**Respectfully Submitted**,

**SUDDUTH & ASSOCIATES, LLC**
1109 Pithon St.
Lake Charles, Louisiana 70601
Tel: (337) 480-0101
Fax: (337) 419-0507
Email: james@saa.legal
Email: kourtney@saa.legal

**BY:** */s/ James E. Sudduth, III*
**JAMES E. SUDDUTH, III, #35340**
**KOURTNEY L. KECH, #37745**
*Counsel for Plaintiff*